UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMAS ARMAND ALEXANDRE BAUDIN,

Plaintiff,

v.

PALO ALTO UNIFIED SCHOOL DISTRICT, et al.,

Defendants.

Case No. 25-cv-10605-PCP

**ORDER GRANTING APPLICATION TO PROCEED *IN FORMA PAUPERIS*, SCREENING COMPLAINT, AND GRANTING LEAVE TO AMEND**

Re: Dkt. Nos. 2, 8

Self-represented plaintiff Thomas Baudin filed a complaint against the Palo Alto Unified School District (PAUSD) and various district personnel, Dkt. 1, followed by an amended complaint, Dkt. 8. Plaintiff also filed an application to proceed *in forma pauperis*—i.e., without paying the otherwise mandatory filing fee. Dkt. 2. The Court grants plaintiff's application. As required by 28 U.S.C § 1915(e)(2), the Court also screens plaintiff's amended complaint and finds that it improperly omits plaintiff's signature and fails to adequately allege any federal claims. In the absence of a viable federal claim, the Court will not exercise supplemental jurisdiction over plaintiff's state law claims. The amended complaint is therefore dismissed with leave to amend. Plaintiff must file a second amended complaint by April 7, 2026, or risk dismissal of his case.

**BACKGROUND**

Plaintiff alleges that on May 13, 2025, he was wrongfully terminated from his substitute teaching position at Ellen Fletcher Middle School after only a few hours of teaching. Plaintiff told a student that the film "Lilo & Stitch" was altered due to the events of September 11, 2001. He alleges that the principal subsequently accused him of telling the student a "9/11 conspiracy theory" and instructed him not to return to the classroom. He later received an email discontinuing his employment with PAUSD. Plaintiff attempted to speak with district personnel multiple times

United States District Court
Northern District of California

by email and in-person to clarify the circumstances that led to his dismissal. Plaintiff also brought a formal complaint to the PAUSD school board. Plaintiff then filed this action alleging five federal claims under 42 U.S.C. § 1983 and eight state law claims against defendants.

**LEGAL STANDARD**

28 U.S.C. § 1915 permits a court to authorize a plaintiff to proceed *in forma pauperis* if the plaintiff shows that they cannot afford the fees necessary to pursue an action. *See* 28 U.S.C. § 1915(a)(1). The Court, however, must screen every civil action brought *in forma pauperis* under § 1915 and dismiss any case that is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from relief." 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000).

**ANALYSIS**

**I.    Plaintiff's application to proceed *in forma pauperis* is granted.**

Upon review of plaintiff's application to proceed *in forma pauperis*, the Court is persuaded that he is unable to pay the filing fee based on his income and financial resources. His application is therefore granted pursuant to 28 U.S.C. § 1915(a)(1).

**II.    Plaintiff must sign the complaint.**

Federal Rule of Civil Procedure 11(a) requires that "every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. … The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention."

Plaintiff's amended complaint is unsigned. Plaintiff must file a second amended complaint that includes his signature. Nevertheless, the Court proceeds to screen the merits of plaintiff's claims so that he may file a second amended complaint resolving both the missing signature and the substantive deficiencies identified by the Court below.

**III.    Plaintiff's amended complaint fails to state a federal claim.**

**A.    First Amendment Retaliation (Count 1)**

Plaintiff alleges that defendants violated his First Amendment rights by "terminating him or refusing to reassign him to substitute positions" after he engaged in protected speech.

2

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Even a temporary or probationary public employee that can be "discharged for any reason or for no reason at all" "may nonetheless be entitled to reinstatement if she was discharged for exercising her constitutional right to freedom of expression." *Rankin v. McPherson*, 483 U.S. 378, 383–84 (1987) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 284–85 (1977)). To determine whether a government employer impeded an employee's First Amendment rights through retaliatory action, courts in the Ninth Circuit use a five-step test, asking:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Johnson v. Poway Unified Sch. Dist.*, 658 F. 3d 954, 961 (9th Cir. 2011) (quoting *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)). Because the test is sequential, a plaintiff's failure to satisfy one step of the test "necessarily concludes our inquiry." *Id.* (citation omitted).

At step one, "[s]peech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Eng*, 552 F.3d at 1070 (citation omitted). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* Plaintiff alleges his speech concerned "historical and educational topics of public concern, including the cultural and media impact of the events of September 11, 2001."

Even assuming the Court finds that this speech addressed a matter of public concern, plaintiff's claim fails at step two because his allegations show that he spoke in his capacity as a public employee. "Statements are made in the speaker's capacity as citizen if the speaker 'had no official duty' to make the questioned statements, or if the speech was not the product of 'performing the tasks the employee was paid to perform.'" At this step, the Court must ask

3

"whether [plaintiff's] speech owes its existence to his position, or whether he spoke just as any non-employee citizen could have." *Johnson*, 658 F.3d at 967. The Ninth Circuit has repeatedly found that "teachers do not cease acting as teachers each time the bell rings or the conversation moves beyond the narrow topic of curricular instruction." *Id.* at 967–68. Rather, they act in their capacities as public employees "when at school or a school function." *Id.* at 968 (concluding that a teacher acted as an employee "when he went to school and taught class, took attendance, supervised students, or regulated their comings-and-goings"); *see Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 522 (9th Cir. 1994) ("While at the high school, whether he is in the classroom or outside of it during contract time, Peloza is not just any ordinary citizen."). Although plaintiff alleges that he spoke "in a private conversation not pursuant to his official duties" when "class was only nominally in session," he nonetheless alleges he spoke to a student, during the school day, and "in a classroom setting." Because plaintiff spoke at school while teaching or supervising students, his speech was made in his official capacity as a public employee. Accordingly, he fails to state a claim for First Amendment retaliation under 42 U.S.C. § 1983.

### B.    First Amendment Right to Free Speech and Right to Petition (Count 2)

Plaintiff alleges that an email from defendant and PAUSD superintendent Don Austin directing plaintiff not to contact anyone in the district or visit any district facilities "constituted an unlawful prior restraint and retaliation for Plaintiff's attempts to petition for redress of grievances."

The petition clause of the First Amendment "protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011). A government employee cannot state a claim for a violation of the petition clause against a government employer for the employer's allegedly retaliatory action unless the employee's petition related to a matter of public concern. *Id.* at 392–93, 398–99. Like claims for retaliation based on speech, "whether an employee's petition relates to a matter of public concern will depend on 'the content, form, and context of [the petition], as revealed by the whole record. … A petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a

United States District Court
Northern District of California

United States District Court
Northern District of California

political or social point of view beyond the employment context." *Id.* at 398. Here, plaintiff's allegations demonstrate that the petitions for which he allegedly faced retaliatory action concerned only private matters. Plaintiff's alleged petitions included emails to and conversations with district personnel as well as a formal complaint to the PAUSD school board. These petitions "request[ed] action on his dismissal" from employment and the failure to reinstate him to his substitute teaching position. The petitions were made through individual channels and, in the case of plaintiff's formal complaint to the school board, an existing mechanism for employee grievances. Taken together, the content and context of plaintiff's petitions indicate that they concerned matters of private concern "based on ordinary workplace grievances." *See id.* at 392. Plaintiff therefore cannot state a claim for retaliation based on this petitioning activity.

Plaintiff also does not state a claim for a violation of his First Amendment rights based on his theory that Austin's email constituted a prior restraint. Prior restraints involve legislative statutes, regulatory schemes, or judicial orders "*forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander v. U.S.*, 509 U.S. 544, 550 (1983) (emphasis in original); *Moonin v. Tice*, 868 F.3d 853, 858 n.1 (9th Cir. 2017). A prior restraint bears "a heavy presumption against its constitutional validity," particularly when it affords a government official or agency unbridled discretion in whether to allow or disallow certain speech or fails to outline sufficient parameters for when speech is allowed. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225–26 (1990). Here, however, plaintiff has not alleged that Austin acted pursuant to any legislative, administrative, or judicial scheme accompanied by any enforcement mechanism—only that Austin asked him to stop emailing district personnel or visiting district facilities. It is not apparent from the amended complaint that Austin had any means to enforce this request given that plaintiff's employment had already terminated. Accordingly, these allegations are insufficient to state a claim for an unlawful prior restraint.

### C.    Fourteenth Amendment Deprivation of Liberty and Due Process (Count 3)

To state a procedural due process claim, a plaintiff must establish "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

protections." *Brewster v. Bd. of Educ. Of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Plaintiff alleges he was terminated without investigation or an opportunity to be heard. In the process, he alleges "Defendants impugned Plaintiff's honesty and fitness to teach, foreclosing future employment opportunities" and "future licensing" for careers in K-12 education and administration. These allegations fail to establish that defendants deprived plaintiff of a constitutionally protected interest.

First, "damage to reputation—without more—is insufficient to implicate the Fourteenth Amendment's Due Process Clause." *Chaudry v. Aragón*, 68 F.4th 1161, 1170 (9th Cir. 2023). Second, although there is a protected liberty interest in the right "to engage in any of the common occupations of life," *Bd. of Regents v. Roth*, 408 U.S. 564, 572 (1972) (citation omitted), this interest "protects the right to pursue an entire profession, and not the right to pursue a particular job." *Armstrong v. Reynolds*, 22 F.4th 1058, 1080 (9th Cir. 2022) (citation omitted). Therefore, to establish a violation of occupational liberty, a plaintiff must plausibly allege that they are "unable to pursue an entire occupation due to Defendant's actions … rising to the level of a government blacklist or the revocation of a license to practice a particular profession." *Id.* at 1081. Here, plaintiff does not allege he has tried to pursue other opportunities in K-12 education and administration and been denied such opportunities as a result of defendants' actions. Because "'loss of future income' and 'future employment opportunities' alone 'do not rise to the level of a deprivation of a constitutionally protected liberty or property interest,'" without more, plaintiff does not allege a deprivation. *Doe v. Or. State Univ.*, 614 F. Supp. 3d 847, 860 (D. Or. 2022) (citation omitted); *see Guzman v. Shewry*, No. 08-cv-00769-MMM (RZx), 2008 WL 11441901, at *10 (C.D. Cal. Mar. 4, 2008) ("Guzman has neither alleged nor proffered evidence that he has been barred forever from the practice of medicine."). Third, "government employees can have a protected property interest in their continued employment *if* they have a legitimate claim to tenure or if the terms of the employment make it clear that the employee can be fired only for cause." *Blantz v. Cal. Dep't of Corr. and Rehab.*, 727 F.3d 917, 922 (9th Cir. 2013) (emphasis in original). Here, plaintiff does not allege he was either tenured or employed in a position in which he could

only be fired for cause.

Because plaintiff fails to adequately allege defendants deprived him of a constitutionally protected interest, he does not state a due process claim on which relief can be granted.

### D.   *Monell* Claims (Counts 1, 2, 3, 4, 10)

Plaintiff's federal claims are also premised on *Monell* liability, including the claims discussed above and his standalone claims for *Monell* liability (count 4) and for failure to train (count 10). Under *Monell*, local governments are "persons" subject to liability under § 1983. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). But a municipality may be held liable for constitutional injuries inflicted by one of its employees or agents only if the underlying violation of federal law resulted from: (1) an express municipal policy; (2) a widespread practice that constitutes a custom or usage; (3) the decision of a person with final policymaking authority; or (4) inadequate training. *Id.*; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *City of Canton v. Harris*, 489 U.S. 378 (1989).

"In order to establish liability for governmental entities under *Monell*, a plaintiff must [plead] '(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

Because the Court has found that plaintiff fails to adequately allege a violation of his First or Fourteenth Amendment rights, plaintiff has failed to plead that he was deprived of a constitutional right. Accordingly, he does not state a *Monell* claim.

### IV.   The Court will not exercise supplemental jurisdiction over plaintiff's state law claims.

Federal courts are courts of limited jurisdiction. Accordingly, a federal court plaintiff must adequately allege that the court has original subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). To do so, a complaint must meet the requirements for either (1) federal question jurisdiction or (2) diversity jurisdiction. 28 U.S.C. §§ 1331, 1332. Federal question jurisdiction requires plaintiffs to specify a federal law that the defendant violated.

United States District Court
Northern District of California

7

28 U.S.C. § 1331. Diversity jurisdiction requires that parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Plaintiff's amended complaint alleges that the Court has original jurisdiction based on federal question jurisdiction. Plaintiff does not allege the citizenship of the parties such that the Court can conclude that is has diversity jurisdiction.

When a federal court has original subject matter jurisdiction, it also has "supplemental jurisdiction over all other claims," including state law claims, "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A federal court "may decline to exercise supplemental jurisdiction," however, if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Because the Court has concluded that plaintiff's complaint, as currently alleged, does not state a viable federal claim, the Court will decline to exercise supplemental jurisdiction over plaintiff's state law claims unless and until he pleads a valid federal claim.

### FEDERAL PRO SE PROGRAM

Plaintiff is reminded that the San Jose Courthouse's Federal Pro Se Program provides free information and limited scope legal advice to self-represented civil litigants. This service is free. The Federal Pro Se Program is available by phone appointment at (408) 297-1480. The Court's webpage includes additional online resources: http://www.cand.uscourts.gov/pro-se-litigants/.

### CONCLUSION

Plaintiff's application to proceed *in forma pauperis* is granted. Upon screening plaintiff's amended complaint under 28 U.S.C. § 1915(e)(2)(B), the Court finds that each of plaintiff's federal claims fails to state a claim on which relief may be granted. In the absence of a valid federal claim, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims. Thus, the amended complaint is dismissed.

**Plaintiff is granted leave to file a second amended complaint by April 7, 2026.** Any second amended complaint must be signed by plaintiff. Failure to timely file a second amended complaint will result in the dismissal of plaintiff's claims with prejudice.

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: February 10, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California

9